NicholsoN, C. J.,
delivered the opinion of the Court.
This is a motion to dismiss a writ of error and su-persedeas granted by Horace Maynard, .Tudge, on the 18th of September, 1868. The motion is based upon the allegation that Mr. Maynard had no authority as a Judge of the ' Supreme Court, to grant the writ. It is said that be was a member of Congress at the time of his appointment by Gov. Brownlow, as a Supreme Judge, to fill out the unexpired term of Judge Milli-gan, wll? resigned the position; and that being a member of Congress, he was ineligible to the office of Supreme Judge; and for that reason his appointment was illegal and void. Assuming that we can judicially know that Mr. Maynard was a member of. Congress at the time of his appointment as a Supreme Judge, it does not follow, that his appointment, for that reason, was illegal and void. It is true, as argued, that, by the Constitution of Tennessee, Art 6, s. 7, and the Code, 748, a member of Congress is disqualified for office under the State Government, and is guilty of a misdemeanor in holding any such office, but it does not follow, that, because Mr. Maynard, whilst a member of Congress, accepted a commission, and qualified as a Supreme Judge, his acceptance of that office was a nullity. The consequence was, if Gov. Brownlow had the authority to appoint him, that he thereby surrendered his right to a seat in Congress. It is settled, that, on the acceptance and qualification of a person to a .second office, incompatible with the one he is *766 then holding, the first office is ipso facto, vacated. It operates as an implied resignation — an absolute determination of the original office. People v. Carrique, 2 Hill, 93; Rex v. Trelleny, 3 Bur., 1616; Millward v. Thatcher, 2 T. R., 87; 13 Petersdorff’s Abr., 3.
It follows, that when Mr. Maynard was appointed as ft Supreme Judge, he vacated his office as a member of Congress and became a Judge of the Supreme Court,, provided Gov. Brownlow had any authority to make the appointment; nor does the fact that Mr. Maynard continued to serve out his time as a member of Congress, affect the question before us. That was a matter entirely for the adjudication of Congress.
' This brings us to the investigation of the legality of Mr. Maynard’s appointment as a Judge. The election of all officers and the filling of all vacancies that might happen by death, resignation, or removal, not otherwise directed and provided for by the Constitution of 1835, was directed therein to be made in such manner as the Legislature might provide. Art. 7, sec. 4. By section 312 of the Code, it was provided, that whenever a vacancy occurs in the office of Supreme Judge, it is made the duty of the Governor to order an election, by issuing proper writs of election; and by section 315 it was provided, that, in the meantime, the Governor should appoint a suitable person to fill the office until the election of a successor; and by section 313, two months’ notice of the election was required to be given. It follows that, upon the resignation of Judge Milligan, the law required Gov. Browmlow to issue writs of election for his successor; and, until the two months’ *767 notice should expire, he could fill the office by a temporary appointment. He had no power under the Constitution or law, to appoint and commission Mr. - Maynard to fill the unexpired term of Judge Milligan. All the power he legally had, was to appoint Mr. Maynard until Judge Milligan’s successor was elected by the people; and the law made it his duty to have the vacancy filled by the people, after giving two. months’ notice.. Nor was the power of Gov. Brownlow enlarged by section 7 of the Schedule to the amended Constitution of 1865. By that section it was provided, that officers already appointed, or who might' thereafter be appointed, should continue to hold their offices until their successors should be elected or appointed and qualified as prescribed by the laws and Constitution. Upon the resignation of Judge Milligan, this clause in the Schedule conferred upon Gov.. Brownlow no power to appoint his successor, otherwise than was provided for by law. It follows, that, Gov. Brownlow had no authority to commission Mr.. Maynard as a Supreme Judge, to fill out the unexpired term of Judge Milligan. .•
But it does not follow, that, because Mr. Maynard’'» commission as a Supreme Judge was illegally issued, authorizing him to hold until the expiration of Judge Milligan’s term, therefore his acts as such Judge are void. Gov. Brownlow had authority to appoint and commission him until Judge Milligan’s successor should; be elected. If Gov. Brownlow had pursued the law and ordered an election, Mr. Maynard might very well have acted under the commission until the election of Judge Milligan’s successor, at which, time his commis *768 sion would have expired. And, on another ground Mr. Maynard’s judicial acts under his commission, would be valid, although his appointment and commission may have been illegal and void. In that view, Mr. Maynard was a Supreme Judge de facto, and his competency as such could not be inquired into by the parties affected by his acts. This position is well established in many cases in this State. The case of Blackburn v. The State, 3 Head, 690, is directly in point. See also 5 Sneed, 514; 9 Hum., 163; 2 Cold., 605. The fact that the official act of Mr. Maynard complained of was an ex parte exercise of judicial functions, does not take the case out of the principle. It is well settled that the judgments and official acts of an officer de facto, are binding and valid; and the competency of the functionary, acting under commission, cannot be inquired into by parties affected by them. He may be removed from the office, and his powers terminated by the proper proceedings; but, until that is done, his acts are binding.
The motion to dismiss is therefore disallowed.